**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-17-00197-CV**
_____

**JEFFERSON COUNTY, TEXAS, Appellant**

**V.**

**CHERISSE JACKSON, Appellee**

**On Appeal from the 172nd District Court**
**Jefferson County, Texas**
**Trial Cause No. E-197,513**

**OPINION**

In this interlocutory appeal, Jefferson County challenges the ruling the trial court made denying its plea to the jurisdiction. The appeal arises from an employment discrimination and whistleblower suit filed by Cherisse Jackson, a County employee who works at the Jefferson County Correctional Facility (the jail). In her suit, Jackson alleged that the County should have promoted her and that the County should not have demoted her from her position as a sergeant at the jail to the position she currently holds as a corrections officer.

1

In one appellate issue, the County argues the trial court should have dismissed all of Jackson's claims. We hold that Jackson failed to meet her burden to establish that the district court possessed jurisdiction to conduct additional proceedings in Jackson's case; as a result, we reverse the trial court's ruling on the plea to the jurisdiction and order Jackson's suit dismissed. Tex. R. App. P. 43.2(c).

Background

In September 2015, Jackson sued the County alleging that Sheriff Mitch Woods[1] and other officers in the Sheriff's Department had discriminated and retaliated against her after she refused to cooperate with a request she alleged Deputy Cathy Werner made of her while investigating the alleged misconduct of another County employee, April Swain. The pleadings and evidence before the trial court show that Deputy Werner is assigned to the Internal Affairs Division of the Sheriff's office.

When the County investigated Swain, it was seeking to determine whether Swain and an inmate had been involved in a sexual encounter at the jail. In Jackson's suit, Jackson claimed that Deputy Werner approached her to determine whether Jackson had witnessed the alleged encounter between Swain and the inmate. According to Jackson's pleadings, she informed Deputy Werner that she had not

---

[1] Sheriff Woods retired in 2016.

personally observed the incident. In any event, Jackson claims that Deputy Werner then asked Jackson to give the County a written statement claiming that she had seen the alleged encounter while viewing a monitor that jailers use to monitor activities inside the jail. Jackson's pleadings do not specify the time or the date that Deputy Werner allegedly made this request.

On September 1, 2015, Jackson filed a claim with the Equal Employment Opportunity Commission (EEOC) complaining that the County had retaliated against her for refusing to provide Deputy Werner with a written statement critical of Swain. Jackson's EEOC complaint alleges that Deputy Werner contacted Jackson in January 2014 and that Deputy Werner asked her to provide a written statement critical of Swain's conduct. According to Jackson's EEOC complaint, she refused Deputy Werner's request, and the County then engaged in a series of acts that resulted in her demotion to the position of corrections officer and in the County's decision not to promote her to a position as a lieutenant.

Six days after Jackson filed her EEOC claim, she sued the County in district court. In her original petition, Jackson claimed the County retaliated against her after she refused to provide the county with a statement critical of Swain's conduct. She alleged the retaliation she suffered affected her job, and by retaliating against her,

the County violated the Whistleblower Act.[2] *See* Tex. Gov't Code Ann. §§ 554.001-.010 (West 2012) (Whistleblower Act). The claims in Jackson's initial petition alleged only that the County's conduct violated the Whistleblower Act. *Id.*

When the County responded to Jackson's suit, it filed a plea to the jurisdiction. A plea to the jurisdiction is a dilatory plea, which governmental entities typically use to defeat a plaintiff's action without regard to whether any of the plaintiff's claims have merit. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). In its plea, the County denied that it demoted Jackson because she had participated in the investigation that involved Swain. The County noted that Jackson's interview with Deputy Werner had occurred several months before Jackson was demoted. The County also alleged that it had legitimate reasons to demote Jackson, explaining that Jackson was demoted following a Disciplinary Review Board hearing, which found that in May 2015, Jackson engaged in insubordinate conduct toward Lieutenant Hawkins, a superior officer. The day after the incident involving Jackson's alleged insubordinate conduct, Lieutenant Hawkins filed a written complaint, directed at Jackson, charging Jackson with handling a

---

[2] The original petition that Jackson filed does not allege that the County violated the Texas Commission on Human Rights Act. *See* Tex. Lab. Code Ann. §§ 21.001-.556 (West 2015 & Supp. 2017) (Texas Commission on Human Rights Act, or TCHRA). Jackson added her TCHRA claim after the County filed its plea.

4

phone call that Hawkins made on the previous day in a way that violated the County's written policies. The County also alleged that a Disciplinary Review Board, after considering Lieutenant Hawkins' charges, found the charges had merit and recommended that Jackson be demoted from her position as a sergeant at the jail.

The County supported the facts alleged in its plea with thirty documents, alleging that the information in the documents supported its claim that Jackson's demotion had been based on the incident involving Lieutenant Hawkins, an incident that it claimed was unrelated to the investigation that it had conducted earlier into Swain's alleged misconduct. According to the County, the decisions it made about Jackson's job were made for legitimate reasons, which it claimed were unrelated to its investigation of Swain.[3]

The documents attached to the County's plea support the County's allegation that it demoted Jackson because Lieutenant Hawkins filed a grievance against Jackson that a Disciplinary Review Board determined had merit. The evidence before the trial court when it ruled on the County's plea included Lieutenant

---

[3] The County failed to properly authenticate the documents that it submitted to the trial court with its plea. But the record does not show that Jackson objected to the authenticity of the documents. In reviewing the parties' arguments, we have considered the documents the County filed with its plea as evidence the trial court considered in ruling on the County's plea.

Hawkins' written complaint, which addressed the incident involving Jackson's insubordinate conduct. Lieutenant Hawkins filed her complaint on May 27, 2015, alleging that, on May 26, 2015, Jackson exhibited insubordinate and unprofessional conduct by hanging up on Lieutenant Hawkins twice after she telephoned Jackson seeking to locate another officer that she needed to contact so that she could complete her duty roster for the next day.

After the County filed its plea, but before the hearing the trial court conducted on the County's plea, Jackson amended her petition several times. In amended pleadings, Jackson added claims alleging the County's retaliatory conduct violated the Texas Commission on Human Rights Act. She also added a claim alleging that she was entitled to a declaratory judgment that the County had violated her rights. *See* Tex. Lab. Code Ann. §§ 21.001-.556 (West 2015 & Supp. 2017) (TCHRA); Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011 (West 2015) (Uniform Declaratory Judgments Act).

In her Third Amended Petition, Jackson's live petition for this appeal,[4] Jackson alleged that the County retaliated against her based on the manner she had

---

[4] Jackson styled her live pleading as "Plaintiff's (Revised) Second Amended Petition[.]" After comparing Jackson's Second Amended Petition, which she filed on May 2, 2017, with her (Revised) Second Amended Petition, which she filed on May 4, 2017, we conclude that Jackson intended her "revised" petition to function as an amended petition. *See* Tex. R. Civ. P. 64. Under the Texas Rules of Civil Procedure, plaintiffs must denominate their pleadings as original, amended, or

6

participated in the investigation involving Swain, and that the County's conduct violated her rights under the Texas Whistleblower Act, the Texas Commission on Human Rights Act, and the collective bargaining agreement between Jefferson County and the Jefferson County Sheriff's Association. *See generally* Tex. Gov't Code Ann. §§ 554.001-.010; Tex. Lab. Code Ann. §§ 21.001-.556. Jackson also alleged that the County's retaliatory conduct, which she claimed was connected to the investigation the County conducted about Swain, violated her rights to speak freely and to be treated equally under the Texas Constitution. *See* Tex. Const. art. I, §§ 3, 3a, 8, 19. Each of Jackson's claims hinged on her ability to prove that the County's conduct occurred in retaliation for her alleged refusal to provide the County with a statement critical of Swain's conduct at the jail.

In response to Jackson's Third Amended Petition, the County supplemented its plea. The County's supplemental plea addresses the claims the County did not expect that Jackson would file when it filed its plea. For example, the County's supplemental plea addresses Jackson's claims seeking declaratory relief. The County alleged that these claims were invalid because none of Jackson's declaratory

supplemental petitions. Nothing in the rules of procedure allow a party to style a petition as a "revised" petition. *See id.* So, we refer to Jackson's "(Revised) Second Amended Petition" in the opinion as Jackson's Third Amended Petition. *See* Tex. R. Civ. P. 71 (providing that a party's mistaken designation of a pleading is to be treated as if the pleading was properly designated).

judgment claims had been based on a facially valid claim. Because the County's plea and the evidence that it produced challenge the existence of a causal relationship between Deputy Werner's investigation and its decisions about Jackson's job, we review the evidence the trial court considered to determine whether the evidence the County produced shifted the burden of proof to Jackson on causation. If it did, we are then required to determine whether Jackson met her burden to prove that an issue of material fact existed on Jackson's claim that the County's decisions affecting her job were made because of her alleged refusal to provide the County with a statement critical of Swain.

When the trial court ruled on the County's plea, the evidence before the court showed that Lieutenant Hawkins filed a disciplinary complaint against Jackson before the County decided to demote her. The complaint filed by Hawkins alleges that Jackson engaged in unprofessional and insubordinate conduct. The evidence goes on to show that the grievance filed by Lieutenant Hawkins resulted in two different Disciplinary Review Board[5] hearings. Both of the Boards that heard

---

[5] The documents the County filed included a copy of the Collective Bargaining Agreement between the Jefferson County Officer's Association and Jefferson County. The Collective Bargaining Agreement creates a disciplinary review hearing procedure, and it calls for disciplinary matters to be heard by a Disciplinary Review Board. Under the Collective Bargaining Agreement, each Disciplinary Review Board consists of seven officers, six of which who are chosen randomly from the Sheriff's Department. The six randomly selected officers serve

8

Lieutenant Hawkins' grievance found that Jackson engaged in insubordinate and unprofessional conduct toward a superior officer. Following the hearings, both Boards forwarded recommendations to the Sheriff recommending that Jackson should be demoted for having engaged in misconduct.[6]

The investigation and the disciplinary proceedings involving Jackson consumed nearly the entirety of the six-month period during which Jackson was eligible to be considered for a promotion to lieutenant.[7] In her pleadings, Jackson alleged that she achieved a passing score on a competitive exam, which the County administered to a group of officers to determine whether these officers should be considered for a possible promotion. Jackson alleged that she took the exam in April 2015. Lieutenant Hawkins filed her complaint about Jackson in late May 2015, and

---

one-year terms. The head of the Board, selected annually by the Sheriff, serves a one-year term.

[6] Following the first Disciplinary Review Board hearing, Jackson complained that a member on that board was ineligible to serve. She alleged that a disciplinary proceeding was decided adversely against that officer within a twelve-month period, which ended on the date that Jackson's first hearing occurred. The Sheriff set aside the first Disciplinary Review Board's decision, and he awarded Jackson a second hearing.

[7] The Collective Bargaining Agreement contains a competitive test procedure. Officers who pass the test are eligible for possible promotions during a six-month period after passing the exam.

her complaint resulted in an investigation and hearings that concluded on September 15, 2015. Thus, the period in which Jackson claims she was eligible for promotion largely overlaps with the period that Jackson was being investigated for engaging in insubordinate conduct toward a superior officer. We also note that Jackson's pleadings do not allege that anyone received a promotion to lieutenant, or that any member of an unprotected class was promoted to the position that she claims the test qualified her to receive.

Jackson produced little evidence when she responded to the County's plea. Instead, she claimed that she did not have the burden to produce any evidence, and she argued that the trial court should accept the allegations in her pleadings as if they were true. That said, Jackson did attach eight documents to her response.[8] Jackson requested that the trial court consider the documents she attached to her response together with the documents the County filed in resolving the County's plea. Jackson argued in her response that the combined documents the parties were asking the trial court to consider created a fact issue on whether the County had retaliated against her because she refused to provide the County with a written statement critical of

---

[8] Jackson did not authenticate the exhibits that she attached to her response. Still, the County never objected to the authenticity of the documents Jackson included with her response. Thus, we consider the documents attached to Jacksons' plea as evidence in resolving the appeal.

10

Swain's conduct with an inmate. Jackson also alleged in her response that the County was not immune from her claims seeking declaratory relief.

In late May 2017, the trial court denied the County's plea. Five days later, the County filed its notice of appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West Supp. 2017) (authorizing interlocutory review of orders denying pleas to the jurisdiction filed by governmental entities). In a single issue, the County argues in its appeal that the trial court committed error by overruling the County's plea.

Appellate Review-Pleas to the Jurisdiction

Governmental immunity protects political subdivisions of the state, including counties, from lawsuits. *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 57-58 (Tex. 2011). "Governmental immunity includes both immunity from liability, 'which bars enforcement of a judgment against a governmental entity, and immunity from suit, which bars suit against the entity altogether.'" *Lubbock Cty. Water Control & Improvement Dist. v. Church & Akin, L.L.C.*, 442 S.W.3d 297, 300 (Tex. 2014) (quoting *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006)). As a result, without the pleader establishing that a waiver of a governmental entity's immunity exists for the claims the plaintiff seeks to advance in a lawsuit, trial courts lack jurisdiction to conduct proceedings to determine the merits of complaints made about a governmental entity's actions. *See Rusk State Hosp. v. Black*, 392 S.W.3d

88, 95 (Tex. 2012). Put simply, a plea to the jurisdiction alleges that the trial court cannot exercise jurisdiction over the plaintiff's claims. *See id.* at 95.

Typically, governmental entities assert a claim of governmental immunity by filing a pleading titled "plea to the jurisdiction." *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004) (noting that immunity from suit defeats a trial court's jurisdiction and is "properly asserted in a plea to the jurisdiction"). Whether a governmental entity has retained governmental immunity from being sued are matters that courts decide as questions of law. *Id.* at 226. So, when governmental entities appeal from such rulings, the rulings are reviewed under a de novo standard. *Id.*

In Jackson's case, Jefferson County's plea to the jurisdiction challenged both the factual sufficiency of Jackson's pleadings and causation. The County alleged that Jackson suffered no adverse employment actions that were related to its investigation into Swain's alleged misconduct. And, the County presented the trial court with evidence supporting its allegation that its decisions about Jackson's job had been made for reasons unrelated to its investigation of Swain.

When a governmental entity challenges the factual sufficiency of a plaintiff's pleadings, the Texas Supreme Court has required that the plaintiff's pleadings contain alleged facts that "affirmatively demonstrate the court's jurisdiction to hear the cause." *Id*. In evaluating whether the factual allegations in a plaintiff's pleadings

12

are sufficient to show that the governmental entity has waived its immunity from being sued, the pleadings are to be construed liberally, and courts must look to the pleader's intent. *Id.* Generally, courts must allow plaintiffs to have a reasonable opportunity to file amended pleadings before the claims can be dismissed. *See Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839 (Tex. 2007); *Miranda*, 133 S.W.3d at 226-27; *Cty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). That said, if the pleadings show that the courts cannot exercise jurisdiction over the plaintiff's case, appellate courts must overturn the trial court's denial of the plea to the jurisdiction without allowing the plaintiff another opportunity to amend the pleadings filed in the suit. *See Brown*, 80 S.W.3d at 555.

The County's plea to the jurisdiction and the arguments it briefed challenge whether the plaintiff produced any evidence of causation. Causation is a required element under both the TCHRA and the Whistleblower Act. *See* Tex. Lab. Code Ann. § 21.055 (West 2015) (making it an unlawful employment practice for an employer to, among other things, retaliate against an employee because the employee "participates in any manner in an investigation, proceeding, or hearing"); Tex. Gov't Code Ann. § 554.002 (making it unlawful for a state or local government entity to retaliate against a public employee who in good faith reports the entity's violation of the law "to an appropriate law enforcement authority"). The evidence the County filed with its plea challenged the merits of Jackson's claim that the

County's decisions about Jackson's job resulted from Jackson's refusal to provide the County with a statement critical of Swain's conduct at the jail.

When a governmental entity produces evidence with its plea, and the evidence shows that the entity's decisions affecting an employee occurred for legitimate, nondiscriminatory and non-retaliatory reasons, the burden of proof shifts to the plaintiff to show that "a disputed material fact regarding the jurisdictional issue" exists. *Miranda*, 133 S.W.3d at 228; s*ee also Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012). Thus, when the County presented evidence showing that its decisions affecting Jackson's job were motivated by Jackson's insubordinate conduct toward Lieutenant Hawkins, the burden of proof shifted to Jackson to prove that an issue of material fact existed on her claim that the County's decisions resulted from Jackson's refusal to provide the County with a statement alleging she observed Swain and an inmate while they were engaged in a sexual encounter at the jail. *See Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 764 (Tex. 2018) (applying a burden-shifting evidentiary framework to a TCHRA retaliation claim); *State v. Lueck*, 290 S.W.3d 876, 881 (Tex. 2009) (noting that under the Whistleblower Act, the elements of a claim "can be considered as jurisdictional facts, when it is necessary to resolve whether a plaintiff has alleged a violation under the Act"); *see also Garcia*, 372 S.W.3d at 635 (noting that the school's argument suggesting that Garcia could not prove a prima-facie case

14

necessarily implied that the elements of the plaintiff's discrimination claim were at issue in the court's jurisdictional inquiry). Thus, we review the trial court's decision using the burden-shifting framework recently approved by the Texas Supreme Court in *Clark*. *Clark*, 544 S.W.3d at 764 ("[W]e hold that when jurisdictional evidence negates the prima facie case or, as in this case, rebuts the presumption it affords, some evidence raising a fact issue on retaliatory intent is required to survive a jurisdictional plea.").

Analysis

*Retaliation Claims*

The County advances several arguments claiming that it was entitled to have all of Jackson's claims dismissed. First, we will address the County's argument that the evidence that it filed with its plea rebutted the presumption created by Jackson's pleadings that she had valid claims. Then, we will discuss whether the evidence that Jackson presented is sufficient to show that an issue of material fact exists on her claim that the County retaliated against her because she refused to provide the County with a statement critical of Swain.

The evidence before the trial court in the hearing on the County's plea tends to show that its decisions about Jackson's job were based solely on the insubordinate conduct she engaged in toward Lieutenant Hawkins, a matter that appears to be unrelated to the County's investigation into whether Swain had a sexual encounter

15

with an inmate at the jail. The evidence the trial court considered in ruling on the County's plea includes Lieutenant Hawkins' written complaint about Jackson's alleged insubordinate conduct, which occurred in May 2015. The evidence the County produced in support of its plea traces its decision to demote Jackson to the results of two Disciplinary Review Board hearings, both of which ended in decisions finding that Jackson engaged in insubordinate conduct toward Lieutenant Hawkins. The evidence includes the recommendations made by those Boards to Sheriff Woods—both Boards recommended that Jackson's conduct should result in her demotion. The evidence before the trial court traced the Sheriff's decision to demote Jackson to the recommendations he received from these Boards. Nothing in the evidence before the trial court ties the County's decisions about Jackson's job to the investigation the County conducted on the conduct allegedly committed by Swain.

Under both the Whistleblower Act and the TCHRA, the Legislature conditioned the waivers of immunity for retaliation claims on evidence sufficient to prove that a violation of the statutes occurred. *See Clark*, 544 S.W.3d at 785 (noting that "once a defendant challenges the plaintiff's case with evidence, the jurisdictional inquiry focuses on the evidence and whether the plaintiff can create a fact issue"); *Guillaume v. City of Greenville*, 247 S.W.3d 457, 461 (Tex. App.—Dallas 2008, no pet.) (suggesting that a plaintiff must establish but-for causation to prove a whistleblower claim). Thus, once a trial court is faced with evidence showing

16

that the governmental entity did not violate the Whistleblower Act or the TCHRA, the presumption favoring the employee's pleadings evaporates, and the employee must come forward with evidence showing that the decisions at issue occurred because the employer engaged in conduct that violated the conduct proscribed by these Acts. *See Clark*, 544 S.W.3d at 784 ((citing *Lueck*, 290 S.W.3d at 882) (explaining that "when the Legislature conditions an immunity waiver on the existence of a statutory violation, the elements of the violation are jurisdictional facts")); *Tex. Dept. of Human Servs. v. Hinds*, 904 S.W.2d 629, 636 (Tex. 1995) ("These arguments persuade us that the standard of causation in whistleblower and similar cases should be that the employee's protected conduct must be such that, without it, the employer's prohibited conduct would not have occurred when it did.").

Although Jackson provided the trial court with additional evidence, the additional evidence Jackson asked the trial court to consider fails to tie the County's decisions over Jackson's job to the investigation the County conducted into Swain's alleged misconduct with an inmate. Jackson attempted to tie the matters together by alleging that Lieutenant Hawkins, Deputy Werner, and Sheriff Woods were friends and that they conspired to violate her rights. However, Jackson failed to produce any evidence supporting these claims. To prove the existence of a conspiracy, Jackson needed to do more than just allege that the officers were friends and from that fact

17

assume the three conspired to punish her for refusing to provide the County with a statement critical of Swain. *See M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 25 (Tex. 2000) (per curiam) (noting that a plaintiff's subjective beliefs cannot overcome summary judgment evidence). Moreover, proving that a conspiracy exists to violate a person's rights under a statute requires proof that at least two individuals were working together to accomplish an unlawful purpose, that the members of the conspiracy had a meeting of the minds on their course of action, and that one of the members committed an unlawful, overt act to further the course of action. *See Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 675 (Tex. 1998). Jackson provided the trial court with no such evidence, and there is nothing in the record suggesting that Sheriff Woods, Lieutenant Hawkins, and Deputy Werner agreed on a course of action to retaliate against Jackson for refusing to provide the County with a statement critical of Swain.

In her brief, Jackson suggests that dismissing her claims would be premature at this early stage of her case. She claims that if given more time, she could obtain evidence supporting her claims. But Jackson's argument is hollow. The discovery period that applies to Jackson's case ended in June 2016, nearly a year before the trial court denied the County's plea.[9] In the trial court, neither party presented any

_____

[9] The record also does not show that Jackson ever asked the trial court to extend the discovery deadlines that applied to her suit. *See* Tex. R. Civ. P.

18

depositions or affidavits to support their claims. The evidence the parties filed in the trial court and the fact that the discovery deadlines that apply to the case have passed suggests to us that the parties engaged in little, if any, formal discovery. Because the evidence the County produced traces its decisions to the incident involving Jackson's insubordinate conduct toward a superior officer, we are unpersuaded that allowing Jackson to ask the trial court to extend the discovery deadlines would result in Jackson discovering any evidence that might support her claims. In sum, the evidence before the trial court fails to prove that an issue of material fact exists on Jackson's claims that the County retaliated against her because she refused to provide the County with a statement alleging that she saw Swain engage in a sexual encounter with an inmate.

We turn to Jackson's remaining retaliation claims, which assert that the County retaliated against Jackson by removing her duties to maintain a closed-circuit monitoring system at the jail, denied her the right to access the grievance procedures available to her under the Collective Bargaining Agreement between the County and the Jefferson County Sheriffs' Association, denied her the right to a fair appeal of

190.3(b)(1)(B)(ii) (requiring discovery in a Level 2 case to be completed within nine months after any party files its first response to the other party's written discovery). Under Rule 190.3, because Jackson's original petition included a request for disclosure, Jackson's opportunity to obtain discovery from the County ended in June 2016. *Id.*

her grievance, and subjected her to a hostile work environment. As to these claims, the County argues that it could not be sued on a Whistleblower Act claim for the same conduct Jackson could have complained about when she filed her administrative complaint with the EEOC. As to these claims, we agree that the fact that Jackson had the right to begin proceedings against the County under the TCHRA prevents her from suing the County on these same claims under the Whistleblower Act.

The TCHRA "provides the exclusive state statutory remedy for public employees alleging retaliation arising from activities protected under the [TCHRA]." *City of Waco v. Lopez*, 259 S.W.3d 147, 155 (Tex. 2008). Under the TCHRA, it is unlawful for an employer to retaliate or discriminate against an employee who "participates in any manner in an investigation, proceeding, or hearing." Tex. Lab. Code Ann. § 21.055(4). As a public employee, Jackson had to use the "specific and tailored anti-retaliation remedy" available to her under the TCHRA rather than seek remedies based on the same alleged misconduct under the Whistleblower Act. *See Lopez*, 259 S.W.3d at 156. We conclude that Jackson was not entitled to rely on the Whistleblower Act on her complaints that the County took some of her job duties away from her, that the County denied her rights under the Collective Bargaining Agreement, that the County denied her a fair appeal of her grievance, and that the County subjected her to a hostile work environment.

The County also argues that Jackson failed to exhaust her remedies on her claims that the County took some of her job duties away from her, that the County denied her rights under the Collective Bargaining Agreement, that the County denied her a fair appeal of her grievance, and that the County subjected her to a hostile work environment. Under the TCHRA, exhaustion of remedies must occur before a trial court can acquire jurisdiction over a party's TCHRA claims. *See Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996); *Tex. Parks & Wildlife Dep't v. Dearing*, 150 S.W.3d 452, 459 (Tex. App.—Austin 2004, pet. denied). Exhausting one's administrative remedies under the TCHRA requires a plaintiff to (1) file a complaint with the Texas Workers Compensation Commission (TWCC) or the EEOC within 180 days of the alleged discriminatory act;[10] (2) allow the TWCC 180 days to dismiss or resolve the complaint; and (3) sue in a district court within 60

---

[10] The purpose of the THCRA includes "provid[ing] for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments[.]" Tex. Lab. Code Ann. § 21.001(1) (West 2015). Thus, the Texas Workers Compensation Commission has provided that the charge of discrimination may be filed with the Texas Workers Compensation Commission, Civil Rights Division or with "an EEOC office." 40 Tex. Admin. Code § 819.41(c) (Westlaw through 43 Tex. Reg. No. 3836) (Tex. Workforce Comm'n, Equal Emp't Opportunity Complaints & Appeals Process). As a result, the Texas Supreme Court has suggested that "[a] claimant may file a complaint with either the EEOC, the federal agency authorized to investigate charges of discrimination, or the [TWCC], the Texas equivalent." *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 504 n.4 (Tex. 2012).

days of receiving a right-to-sue letter, but no more than two years after the date that the plaintiff filed the administrative complaint. Tex. Lab. Code Ann. §§ 21.202, .208, .254, .256 (West 2015). Jackson's EEOC complaint, which started her TCHRA proceeding, fails to mention any claims beyond Jackson's complaints about being demoted and about not being promoted.

Jackson's EEOC charge of discrimination[11] alleges:

> I refused to lie for IAD investigator Cathy Werner when she was protecting a friend from discrimination charges by white coworker April Swain. I was targeted by Werner, her command friends, and sheriff. I was falsely accused to be denied promotion, and then Sheriff falsely [and] illegally accused me [and] demoted me.

"The crucial element of a charge of discrimination is the factual statement contained therein." *Preston v. Tex. Dep't of Family & Protective Servs.*, 222 F. App'x 353, 357 (5th Cir. 2007) (per curiam). While complaints that are filed before administrative agencies by persons who have no legal training are to be liberally construed, Jackson's additional claims, which allege that the County took some of her duties away from her, that the County interfered with her rights to file grievances, that she was denied a fair appeal of her grievance, and that the County subjected her to a hostile work environment are separate and distinct claims from Jackson's

---

[11] Jackson filed her EEOC charge on September 1, 2015. The record in the trial court shows that on May 21, 2016, Jackson's attorney forwarded a copy of Jackson's EEOC complaint to the Texas Workers Compensation Commission, Civil Rights Division.

complaints about being demoted and not being promoted. *See id*. We conclude that Jackson's administrative complaint filed with the TCHRA failed to put the County on notice that it needed to investigate any claims beyond the investigation required to determine why Jackson was not promoted and to determine why the Sheriff demoted Jackson from her position as sergeant. *See Bexar Cty. v. Gant*, 70 S.W.3d 289, 293 (Tex. App.—San Antonio 2002, pet. denied) (explaining that because the employee's lawsuit included complaints about allegedly unlawful employment practices not included in the administrative charge, the employee failed to exhaust his administrative remedies about conduct that he failed to include in his administrative charge); *see also* Tex. Lab. Code Ann. § 21.201 (West 2015) (describing the contents to include in the administrative stage of a TCHRA case).

The failure to exhaust one's administrative remedies deprives the trial court of jurisdiction to hear a plaintiff's unexhausted claims. *See Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 558 (Tex. 2016) (recognizing that the "exhaustion of administrative remedies is an issue of subject-matter jurisdiction"); *Schroeder v. Tex. Iron Works, Inc.*, 813 S.W.2d 483, 487 (Tex. 1991) ("Construing the [TCHRA] to require exhaustion is consistent with its purpose to provide for the execution of the policies embodied in Title VII, 42 U.S.C. § 2000e et seq."). We hold that Jackson exhausted her administrative remedies only for two of her claims, that the County demoted her in retaliation for her alleged refusal to provide a statement critical of

23

Swain and that the County retaliated against her by failing to select her for a promotion because she allegedly refused to provide a statement about Swain. *See Preston*, 222 F. App'x at 357 (concluding that the employee had exhausted her remedies on some of her claims but not others, given the factual allegations in the employee's administrative complaint).

Having carefully considered the parties' briefs and the evidence before the trial court when it ruled on the County's plea, we conclude that Jackson failed to meet her burden to present a prima-facie case rebutting the County's evidence showing that the County's decisions about Jackson's job were unrelated to her alleged refusal to provide the County with a statement critical of Swain. As for Jackson's remaining claims, we conclude that Jackson both elected to pursue a TCHRA remedy by filing an EEOC complaint and that she failed to exhaust her administrative remedies as for her claims that the County took some of her job duties away from her, prevented her from accessing the grievance procedure, interfered with her right to appeal, and subjected her to a hostile work environment. In conclusion, we hold the trial court erred when it denied the County's plea challenging the trial court's authority to hear all of Jackson's Whistleblower Act and TCHRA claims.[12]

---

[12] In her brief, Jackson argues that the County should have raised its complaints that her pleadings were insufficient by filing special exceptions or by

*Declaratory Judgment and Constitutional Claims*

Jackson's pleadings include several claims for declaratory relief, which Jackson based on article I, sections 3, 3a, 8, and 19 of the Texas Constitution. *See* Tex. Const. art. I, §§ 3, 3a, 8, 19. Article I, section 3 provides that all persons have equal rights; article I, section 3a provides that equality under the law shall not be denied because of a person's sex, race, color, creed, or national origin; article I, section 8 provides that all persons shall be at liberty to speak; article I, section 19 provides that no person shall be deprived of life, liberty, property, privileges or immunities, except by due course of law. *Id*. According to Jackson, governmental immunity does not bar declaratory judgment claims when an individual is seeking to vindicate her constitutional rights.

---

moving to dismiss under Rule 91a of the Texas Rules of Civil Procedure. *See* Tex. R. Civ. P. 91 (Special Exceptions); Tex. R. Civ. P. 91a (Dismissal of Baseless Causes of Action). To the extent the trial court might have relied on these arguments, the trial court committed error because a governmental entity may challenge the facial validity of a plaintiff's claims in a plea to the jurisdiction. *See Miranda*, 133 S.W.3d at 227 ("If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend."). This Court has previously rejected an argument practically identical to the one Jackson raises in her case in another case that involved another plaintiff and another governmental entity. *See Jackson v. Port Arthur Indep. Sch. Dist*., No. 09-15-00227-CV, 2017 Tex. App. LEXIS 3527, at \*\*16-18 (Tex. App.—Beaumont Apr. 20, 2017, no pet.) (mem. op.) (concluding that a school employee's argument that the District could use only special exceptions or a Rule 91a motion to test her pleadings lacked merit since a plea to the jurisdiction can be used to test the facial validity of a plaintiff's pleadings).

Yet "immunity from suit is not waived if the constitutional claims are facially invalid." *Klumb v. Houston Mun. Emps. Pension Sys.*, 458 S.W.3d 1, 13 (Tex. 2015). Jackson's article I, section 3 and section 3a claims imply that she could establish a valid basis for her claims that the County discriminated against her in violation of her rights—that is, that she could prove that she was treated differently than other, similarly situated, employees. Yet none of the evidence the parties asked the trial court to consider established that Jackson had been treated any differently than other, similarly situated, employees. The evidence in the record that shows how Jackson was treated tends to show that the Sheriff's decisions to demote Jackson and in not promoting her were made based on at least two legitimate government objectives— following the recommendations made by boards created through a collective bargaining procedure, and enforcing discipline within a system that emphasizes requiring employees of a lower rank to obey legitimate commands and requests when they are made by officers with a higher rank. *See id*. at 13-14. Because Jackson failed to respond to the County's plea with evidence showing that she could prove the County retaliated against her for refusing to provide the County with a statement about Swain's alleged conduct involving an inmate, we conclude that Jackson's article I, section 3 and 3a claims are facially invalid. Because Jackson's equal rights claims are facially invalid, we hold that the County did not waive its immunity from suit on those claims. *Id*.

To obtain declaratory relief on her article I, section 19 due course of law claim, Jackson needed to show that she has a constitutionally protected liberty or property interest being classified as a sergeant or in being promoted to the position of lieutenant. *Id.* at 15 (citing *Univ. of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 929 (Tex. 1995) ("Before any substantive or procedural due-process rights attach, however, the Petitioners must have a liberty or property interest that is entitled to constitutional protection.")). Generally, a constitutionally protected right is a vested right; it is not merely an expectation that one might be able to obtain or maintain a classification or job. *Id.*

Generally, public employees do not have vested property interests in their jobs. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538-39 (1985); *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564 (1972). While the Collective Bargaining Agreement gave Jackson some rights, we find nothing in that Agreement that purports to give employees who work for the Sheriff a constitutionally protected interest in their rank. For example, under the Collective Bargaining Agreement, the Sheriff need not follow whatever recommendations Disciplinary Review Boards might make.[13] While the Collective Bargaining Agreement creates a process for the

---

[13] Article 28, Section IV provides:

27

handling of disciplinary matters as well as a process for qualifying candidates for promotion, the rights Jackson enjoys under the Collective Bargaining Agreement do not give her any vested interest in her job. *See Klumb*, 458 S.W.3d at 15. Because Jackson's due-course of law claims are facially invalid, we hold that the County did not waive its immunity from suit on those claims. *Id.*

Next, we turn to Jackson's article I, section 8, free-speech claim. Generally, to bring a valid claim for violating a defendant's constitutionally protected right to engage in free speech a plaintiff must allege facts showing that (1) the speech that is the subject of the case involves a matter of public concern, (2) the employee's interest in commenting on the matter was greater than the employer's interest in efficiently managing its affairs, and that (3) the employee's speech motivated the employer to take the adverse employment action that lies at the heart of the plaintiff's

---

Within ten (10) days of receipt of the written recommendation by the D.R.B., the Sheriff shall determine the disciplinary action to be taken against the affected member. The Sheriff may accept or reject either in whole or in part the recommendation of the D.R.B.

Additionally, Article 14, Section IV of the Collective Bargaining Agreement provides no right of appeal from decisions that the Sheriff might make about who should be promoted. Instead, the agreement allows the Sheriff to choose from among the group that passes the competitive exam who should receive a promotion. Finally, Article 11 of the Collective Bargaining Agreement provides that "all power and authority which has not been abridged, delegated, granted or expressly limited by some written provision of this Agreement is retained by the County and by the Sheriff."

action. *See Thompson v. City of Starkville, Miss.*, 901 F.2d 456, 460 (5th Cir. 1990) (citing *Frazier v. King*, 873 F.2d 820, 825 (5th Cir. 1989)). While Jackson's free-speech claims rely on the Texas Constitution's free-speech clause, article I, section 8 is not generally treated as granting rights extending beyond those protected by the First Amendment to the U.S. Constitution. *See Comm'n for Lawyer Discipline v. Benton*, 980 S.W.2d 425, 434 (Tex. 1998). For example, except for cases involving an action that amounts to a prior restraint, the Texas Supreme Court has refused to hold that the Texas Constitution's free-speech clause affords a plaintiff any greater rights than those afforded under the First Amendment. *See generally Tex. Dep't of Transp. v. Barber*, 111 S.W.3d 86, 106 (Tex. 2003); *Operation Rescue-Nat'l v. Planned Parenthood of Houston & Se. Tex., Inc.*, 975 S.W.2d 546, 557-560 (Tex. 1998). Jackson has never claimed that the County's conduct created a prior restraint on her constitutional rights.

As a general rule, when employees are complaining about speech that they made pursuant to their job duties, as compared to speech they made as a citizen, their speech is not protected. The question is "whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane v. Franks*, ___ U.S. ___, 134 S.Ct. 2369, 2379 (2014). In her pleadings, Jackson alleged that her job duties included supervising the closed-circuit monitors, and she alleged that the system was removed from her supervision because

she refused to provide the County with the statement critical of Swain. Even so, nothing in Jackson's pleadings or in the evidence suggests that Jackson ever claimed, much less proved, that she made any public statements addressing the County's handling of the investigation that it conducted about Swain's alleged conduct at the jail.

Here, Jackson's pleadings and the evidence in the record show that the speech Jackson has complained about involved her internal communications about Deputy Werner's request with supervisors above her in the chain of command. Nothing in the record shows that Jackson's claims related to any speech that she made to anyone outside her department. Thus, the speech at issue in Jackson's case is not treated as the speech of a citizen engaging in exercising her First Amendment rights.

We conclude that Jackson's pleadings fail to allege a facially valid free-speech claim. *See Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006); *Caleb v. Carranza*, 518 S.W.3d 537, 544 (Tex. App.—Houston [1st Dist.] 2017, no pet.). Thus, the trial court should have dismissed Jackson's free-speech claims. *See Caleb*, 518 S.W.3d at 545.

Collective Bargaining Agreement Claims

Finally, we turn to Jackson's claim that she was entitled to have the trial court grant a declaratory judgment finding that the County had violated her rights under the Collective Bargaining Agreement. In her pleadings, Jackson alleged that the County violated the Collective Bargaining Agreement by mishandling the scoring

30

of the test the County gave to her and other officers in April 2015, and that the County violated the Collective Bargaining Agreement by empaneling a Disciplinary Review Board that included an officer who was not qualified to serve.

Regardless of her theories, Jackson's pleadings failed to allege or establish that the Legislature had waived a county's immunity from suit for breach of contract claims. Under Texas law, political subdivisions, such as counties, enjoy immunity from suit unless the Legislature has enacted a statute waiving their right to rely on their immunity from suit. *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006). Merely by entering into a contract, such as the Collective Bargaining Agreement here, or by violating an agreement's terms, a county does not waive its immunity from being sued. *See Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 408 (Tex. 1997) ("The act of contracting does not waive the State's *immunity from suit*."); *Potter Cty. v. Tuckness*, 308 S.W.3d 425, 431-32 (Tex. App.—Amarillo 2010, no pet.) (concluding that no cause of action for breaching a contract existed against the County where the Legislature had not waived the County's immunity from suit); *see also Patterson v. Marcantel*, No. 09-16-00173-CV, 2017 Tex. App. LEXIS 10046, at **37-38 (Tex. App.—Beaumont Oct. 26, 2017, no pet.) (concluding that governmental immunity prevented a former deputy sheriff employed by Liberty County from suing Liberty County on a claim alleging the County had breached an unwritten agreement).

Even if Jackson could establish that a valid waiver of immunity existed on her claims alleging that the County breached the Collective Bargaining Agreement, Jackson's rights under that agreement are subject to an arbitration clause that required Jackson to arbitrate her claims. Article 18, section I of the Collective Bargaining Agreement requires that all matters, except matters involving wages,[14] "be resolved by the provisions in this article." Article 18, section III of that same agreement required Jackson to arbitrate any matters that remain unresolved after she followed the procedures governing grievances.

Jackson failed to allege that she had filed claims in arbitration over the County's alleged breach of the Collective Bargaining Agreement, and she failed to allege that she had exhausted her claims by pursuing them in arbitration before suing. We conclude the trial court lacked jurisdiction over Jackson's claims alleging that the County had violated the Collective Bargaining Agreement.

In conclusion, no matter how Jackson might try to re-plead her various claims, on this record the trial court lacked jurisdiction over the claims Jackson advanced in her suit. *See Tex. Dep't of Transp. v. Jones Bros. Dirt & Paving Contractors, Inc.,*

---

[14] Article 19 of the Collective Bargaining Agreement contains a schedule of the hourly, monthly, and yearly wage for the various classifications of officers employed by the County. In any event, Jackson did not allege that the County failed to pay her the wages required based on her classifications in Article 19 of the Collective Bargaining Agreement.

92 S.W.3d 477, 484-85 (Tex. 2002) (concluding that the court of appeals erred by allowing the plaintiff the opportunity to re-plead when it was apparent that the plaintiff had failed to exhaust its administrative remedies before suing and the governmental entity was immune from a breach of contract claim). As a result, allowing Jackson the opportunity to re-plead her claims would be useless. As a matter of public policy, courts will not require a party to perform useless acts. *Mackey v. Lucey Prods. Corp.*, 239 S.W.2d 607, 608 (1951) ("The law does not require the doing of a vain and useless thing, and by our opinions and judgments we will not so require.").

## Conclusion

Although the County raises several additional arguments in its brief to support dismissing Jackson's claims, we need not address them since Jackson failed to present evidence showing that the trial court could exercise jurisdiction over her claims. *See* Tex. R. App. P. 47.1. For the reasons we have discussed, we reverse the trial court's order denying the County's plea, we render judgment granting the County's plea, and we order Jackson's suit dismissed, with prejudice. *See Harris Cty. v. Sykes*, 136 S.W.3d 635, 639 (Tex. 2004) (noting that a judgment dismissing a case with prejudice was appropriate when the trial court lacked jurisdiction because of a sovereign immunity bar).

REVERSED AND RENDERED.

_____
HOLLIS HORTON
Justice

Submitted on September 28, 2017
Opinion Delivered July 26, 2018

Before McKeithen, C.J., Horton and Johnson, JJ.